In re Stanislaw R. BURZYNSKI, M.D., and Burzynski Research Institute Inc., Petitioners.

No. 92–2883.

United States Court of Appeals, Fifth Circuit.

April 13, 1993.

734

Richard A. Jaffe, Houston, TX, for petitioners.

Mark Wawro, Susman Godfrey, Houston, TX, for Aetna Life and Hinshaw.

Grace P. Monaco, Washington, DC, pro se and for Emprise.

ON PETITION FOR REHEARING

Before SNEED *, REAVLEY, and BARKSDALE, Circuit Judges.

BY THE COURT:

This case resembles one of those 1920's automobiles that sometimes, even when my father was driving, would become stuck on a high center on a slightly improved road in east central Texas following a wet early spring. It seems to defy all efforts of both the district and circuit courts to bring about a final disposition. Certainly some of the blame rests with this court. In our first encounter we properly rejected the defense of privilege which the defendants had argued to defeat all the claims of the plaintiff. 967 F.2d 1063 (5th Cir.1992). We assumed implicitly that on remand the district court would either set aside at least some of its dismissals of various counts of the complaint without prejudice and find that a possible cause of action had been stated, or that all of its dismissals would be transformed into dismissals with prejudice. Our direction to the district court on remand to call for answers by the defendant was based on the first assumption (that some dismissals would be set aside) and did

---

* Senior Circuit Judge of the Ninth Circuit, sitting by designation.

not adequately consider the second (that all dismissals would be altered to "with prejudice.")

It appears that another possibility existed. That is, for the district court to take no action with respect to prior dismissals without prejudice nor to call for answers by the defendant. At that point the plaintiffs sought a writ of mandamus to direct the district court to reinstate all the claims and call for answers thereto. We granted the writ to which the defendants have responded with a petition for rehearing.

We acknowledge error which was based upon the inadequate assumptions set forth above. What the parties want at this stage of the case is a decision with respect to each of the claims—whether its dismissals without prejudice were proper pending additional pleading, were improper because the claim does set forth a cause of action, or were improper because they should be dismissed with prejudice.

While we could lift the writ of mandamus and remand to the district court to make those determinations, the cause of expedited justice is better served by this court assuming this duty and then remanding to the district court such claims as may survive our review with proper instructions.

## I.

### ALLEGATIONS IN COMPLAINT

While the history of the alleged facts in this litigation appears in 967 F.2d 1063, *supra,* it will assist the reader to repeat them in substance at this time.

The plaintiff, Dr. Burzynski, operates the Burzynski Research Institute (BRI), and treats terminally ill cancer patients with a non-FDA approved treatment based on anti-neoplastins. Burzynski claims the treatment, while experimental, is still reimbursable under many insurance policies, including Aetna's. The plaintiff alleges that in the mid–1980's Aetna began denying rightful claims for this treatment in order to reduce its claims exposure.

One of Burzynski's patients sued Aetna for reimbursement in August 1986. After she died, Burzynski intervened as assignee of her claims against Aetna. *Burzynski v. Aetna Life Ins. Co.,* No. H–89–3976 (S.D.Tex. Apr. 1, 1992) [hereinafter *Burzynski I*]. This suit eventually ended in summary judgment for both sides on March 31, 1992. The plaintiff alleges that during the course of the lawsuit, the defendants committed many fraudulent acts.

First, Aetna hired a litigation consultant, Ms. Grace Monaco, who, according to the plaintiff, advised Aetna to file a RICO counterclaim against BRI which the defendants "knew ... had no basis in fact." She also published a litigation "Alert" about the RICO counterclaim.

Second, during discovery in *Burzynski I* from January to March 1989, Aetna's law firm, Hinshaw, Culbertson, Moelmann, Hoban & Fuller (Hinshaw Culbertson) sent a letter (Aetna/Hinshaw letter) to at least thirty five insurers. The ostensible purpose of the letter was a discovery request, however, it also served to dissuade other insurers from paying BRI claims. It urged them to stop paying BRI claims because the BRI treatment was "worthless," was "mislabel[ed] as chemotherapy," and was "unreimbursable." In addition, the Aetna/Hinshaw letter stated that Dr. Burzynski's claims forms contained misrepresentations and that he "defrauded" Aetna. The letter has an alarmist tone; it begins:

> "This letter is sent to you as a result of an action filed by AEtna Life Insurance Company that may directly affect your company. You may have paid and may still be paying claims for cancer treatments of your insureds with an experimental substance used by Dr. Stanislaw Burzynski of Houston, Texas. AEtna Company has filed a civil RICO action against Dr. Burzynski. *This letter is to warn you of potentially fraudulent claims for insurance reimbursement that may have been made to your company....*" (emphasis added)

Most of the plaintiff's claims against Aetna are based on this letter.

Third, the plaintiff alleges that at some point after *Burzynski I* began, Aetna, through Monaco, created Emprise, Inc. Emprise ostensibly has no connection to Aetna, and its stated purpose is to provide objective reviews of alternative medical practitioners. However, Burzynski maintains that Emprise has the unstated purpose of generating negative reviews of alternative medical practitioners like Burzynski in order to bolster Aetna's position in denying coverage for this treatment. Burzynski also alleges that Monaco submitted false federal grant applications to gain federal funding for Emprise's projects. He maintains that her applications did not disclose Emprise's "real purpose," its "close working connection" to Aetna, or Monaco's position as an Aetna litigation consultant.

Fourth, during the course of discovery in *Burzynski I*, Aetna filed "false and misleading *ex parte* motions" in order to get privileged claims information from other insurers. The court awarded $11,100 in attorneys' fees for this abusive and "almost unconscionable" discovery practice.

Fifth, also during *Burzynski I*, Monaco contacted researchers at the Medical College of Georgia (MCG) and, according to the plaintiff, tried unsuccessfully to dissuade them from continuing their research on antineoplastons. Consequently, in April 1989, the defendants served subpoenas and notices of depositions on MCG researchers to "intimidate" the scientists into dropping their antineoplaston research project and "without any intention of actually conducting discovery."

Last, to "obtain[ ] leverage in its civil litigation," Aetna "goaded" government agencies, in particular the local U.S. Attorney's office, into investigating Burzynski and gave them false information about him.

## II.

## ANALYSIS OF CLAIMS

*Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957), fixed the content of "notice" pleading: "[A]ll the Rules require is 'a short and plain state-ment of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."

The plaintiff has alleged seven different causes of action, tortious interference with contract, tortious interference with prospective business relations, abuse of process, business disparagement, a violation of the Texas Insurance Code, an Illinois statutory law violation for consumer fraud, and a RICO violation. Guided by *Conley v. Gibson*, we will examine the plaintiff's causes of action to see if each states a claim.

### A. *Tortious Interference With Contract.*

■ ] A cause of action for tortious interference with contract requires: 1) a contract, 2) an intentional act, calculated to cause damage to the plaintiff, that interferes with the contract, and 3) proximate cause of actual damages to the plaintiff. *Kiepfer v. Beller*, 944 F.2d 1213, 1220 (5th Cir.1991).

■ ] The plaintiff adequately pleaded the first element, the existence of a contract. The plaintiff alleged that several BRI patients had insurance contracts with Transport Life Insurance Company, Guardian Life Insurance Company, and Blue Cross and Blue Shield of Massachusetts. Dr. Burzynski and BRI are arguably third-party beneficiaries of these insurance policies, and thus may maintain an action for tortious interference of contract. W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 129, at 1000 (5th ed. 1984).

The plaintiff also pleaded the second element, an intentional act that interferes with the contract and is calculated to cause damage to the plaintiff. This action is based on the Aetna/Hinshaw letter to insurers. Hinshaw Culbertson sent the letter to Transport Life, Guardian Life, and Blue Cross/Blue Shield of Massachusetts, among others. The alarming tone of the Aetna/Hinshaw letter suggests that Aetna intended to cause damage to BRI by halting reimbursements from other insurers.

The plaintiff also pleaded the third element, proximate cause of actual damages. Burzynski alleges that, by sending the letter, Aetna and Hinshaw Culbertson "proximately caused financial injury" of $5,000,-000—in other words, the three insurers stopped payments to BRI because of the letter. The district court erred in dismissing the first cause of action, tortious interference with contract, under Rule 12(b)(6). The defendants must respond to the plaintiff's allegations.

## B. *Tortious Interference With Prospective Business Relations.*

■ Burzynski also pleaded the second cause of action for tortious interference with prospective business relations. The requisite elements are: 1) a reasonable probability that the plaintiff would have gotten a contract, 2) malicious and intentional action by the defendant which aborted the prospective business relationship, and 3) actual harm to the plaintiff. *C.E. Services, Inc. v. Control Data Corp.*, 759 F.2d 1241, 1249 (5th Cir.), *cert. denied*, 474 U.S. 1037, 106 S.Ct. 604, 88 L.Ed.2d 583 (1985). Justification on the part of the defendant is an affirmative defense on which the defendant bears the burden of pleading and proof. *Kiepfer*, 944 F.2d at 1220.

The plaintiff alleged that Hinshaw Culbertson sent the Aetna/Hinshaw letter, described above, to thirty five named and other unnamed insurers for the purpose of interfering with prospective contractual relations between BRI and the insurers. The plaintiff alleged proximate cause and actual damages.

■ Burzynski also adequately pleaded the first element, "reasonable probability" of a contract. In reviewing a 12(b)(6) dismissal, we must assume the allegations are true and affirm the dismissal only if "it is clear that no relief could be granted under *any set of facts that could be proved consistent with the allegations.*" *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (emphasis added). If prospective clients of BRI, insured by one of the thirty

five recipients of the Aetna/Hinshaw letter, called to check on their coverage before undergoing BRI treatment, they might have been denied coverage because of the letter. They therefore might not have undergone BRI treatment. This set of facts is consistent with the allegations and springs to mind upon reading the complaint. The district court erred in dismissing the plaintiff's second cause of action, tortious interference with prospective business relations.

## C. *Abuse of Process.*

■ The plaintiff failed to plead his third cause of action, abuse of process. It has the following elements: 1) the defendant made an illegal or improper use of the process, 2) the defendant had an ulterior motive, and 3) the illegal act damaged the plaintiff. *Baubles & Beads v. Louis Vuitton, S.A.*, 766 S.W.2d 377, 378 (Tex.Ct.App. 1989). The plaintiff bases this claim on the subpoenas and notices of deposition to the Medical College of Georgia researchers and the *ex parte* subpoenas to insurers. He says that the defendants abused legal process "in causing lawful process to issue for an improper purpose"; the lawfully issued subpoenas were allegedly used "to intimidate" the researchers at the Medical College of Georgia into dropping their antineoplaston research project.

■ This theory is flawed. The plaintiff failed to allege the first element, an illegal or improper use of process. An ulterior motive does not supplant the first element. In *Blanton v. Morgan*, 681 S.W.2d 876, 877–78 (Tex.Ct.App.1984), the court affirmed the dismissal of an abuse of process claim where the plaintiff alleged that the defendant filed an amended pleading seeking punitive damages to extort settlement, then dropped the punitive damage claim just before trial began: "Even if we assume that the amended pleading was maliciously filed, [the plaintiff's] suit is fatally defective because it fails to allege an improper use of the process." *See also Baubles & Beads*, 766 S.W.2d at 378–79 (affirming summary judgment where the de-

fendant successfully executed a validly issued ex parte seizure order, although the plaintiff alleged the defendant seized its property "to intimidate" it); *Martin v. Trevino,* 578 S.W.2d 763, 769 (Tex.Civ.App. 1979) ("The mere procurement or issuance [of process] with a malicious intent ... is not actionable. This is so because there must be an improper use of the process after its issuance."); *Blackstock v. Tatum,* 396 S.W.2d 463, 468 (Tex.Civ.App.1965) ("[T]here is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.").

The district court did not err in dismissing this cause of action. We affirm the dismissal *with* prejudice because we conclude, as a matter of law, that the plaintiff cannot make out this cause of action.

### D. *Business Disparagement.*

 Burzynski did plead the necessary elements for a business disparagement claim: 1) publication of disparaging and false words, 2) with malice, 3) which cause special damages, and 4) lack of privilege. *Hurlbut v. Gulf Atl. Life Ins. Co.,* 749 S.W.2d 762, 766 (Tex.1987).

The district court erred in dismissing this cause of action against Aetna and Hinshaw Culbertson; it apparently thought this cause of action was based solely on Monaco's litigation "Alerts" and her communications to the Medical College of Georgia. However, this claim is also based on the Aetna/Hinshaw letter. Therefore, the district court erred in dismissing the business disparagement cause of action against the defendants Aetna and Hinshaw Culbertson.

### E. *Texas Insurance Code Article 21.21.*

 The plaintiff has not and cannot make out a cause of action under the Texas Insurance Code Article 21.21, section 16(a), which states that:

Any person who has been injured by another's engaging ... in any practice *defined by Section 17.46* of the Business & Commerce Code, as amended, as an unlawful deceptive trade practice may maintain an action against the company or companies engaging in such acts or practices. (emphasis added)

The plaintiff alleges that the defendants violated Texas Business and Commerce Code, Section 17.46(b)(8), which covers conduct that "disparag[es] the goods, services, or business of another by false or misleading representation of facts." The plaintiff alleges that the Aetna/Hinshaw letter, a litigation "Alert" sent by Monaco, and various communications from Monaco to the Medical College of Georgia in which Monaco "attempted to dissuade them from continuing further research on antineoplastons" constitute the statutorily prohibited conduct. He also alleges proximate cause of $5,000,000 in damages and a lost long term licensing agreement.

This is one of those cases in which the apparent plain meaning of the statute provides little guide to its meaning. Despite this broad statutory language which seems to give standing to "any person," under the proper interpretation, Burzynski and BRI do not have standing to bring an action under Insurance Code Art. 21.21. The Texas courts have severely limited standing to sue under this provision. In *Chaffin v. Transamerica Ins. Co.,* 731 S.W.2d 728, 731 (Tex.Ct.App.1987), the court forged a required link between the plaintiff and defendant. It held that the plaintiff must be either an insured of the defendant or a third party beneficiary of a policy underwritten by the defendant. Burzynski does not allege that he is either an insured of Aetna's or a third party beneficiary of an Aetna policy. Rather, his theory is that when Hinshaw Culbertson sent the disparaging Aetna/Hinshaw letter to other insurers, Aetna injured the plaintiff's relationship with these *other insurers.* The district court properly dismissed the claim, citing *Chaffin.*

It is true, however, that the standing requirement is somewhat broader than *Chaffin* suggests. In *Hermann Hosp. v. National Standard Ins.,* 776 S.W.2d 249, 252 (Tex.Ct.App.1989), a Texas court of

appeals held that the plaintiff, a hospital, did have standing to sue the defendant insurer under Insurance Code Art. 21.21 despite not being an insured or a third party beneficiary of the defendant's policy. The facts of *Hermann* were that the plaintiff hospital had relied on the defendant insurer's false representations of coverage before admitting a patient and incurring the cost of treating him. *Id.* at 252.

While *Hermann* broadened standing to bring suits under Article 21.21 somewhat, Burzynski still does not have standing. The Fifth Circuit declined to use *Hermann* to erase or severely limit the *Chaffin* position. We stated the new test for standing in *Warfield v. Fidelity and Deposit Co.*, 904 F.2d 322, 327 (5th Cir.1990): *"Chaffin* and *Hermann* stand for the proposition, therefore, that absent privity of contract or some sort of reliance by the person bringing a claim on the words or deeds of the insurer, a suit will not lie under art. 21.21." Since Burzynski cannot argue that he himself relied on the false representations in the Aetna/Hinshaw letter, the district court did not err in dismissing this claim under Fed.R.Civ.P. 12(b)(6). However, we believe the claim should be dismissed *with* prejudice.

### F. *Illinois Consumer Fraud Statute.*

The plaintiff also failed to plead a cause of action under the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½, para. 261 et seq. (1991). In order to state this cause of action, a plaintiff must plead the following: 1) a deceptive act or practice, 2) the defendant intended that the plaintiff rely on the deception, and 3) the deception occurred in a course of conduct involving trade or commerce. *Siegel v. Levy Org. Dev. Co.*, 153 Ill.2d 534, 180 Ill.Dec. 300, 304, 607 N.E.2d 194, 198 (1992).

The plaintiff pleaded the first element, a deceptive act. He bases the claim on the Aetna/Hinshaw letter, the litigation "Alerts," and Monaco's communications to the Medical College of Georgia.

However, the plaintiff cannot plead the second element—that Aetna in-tended for Burzynski and/or BRI to rely on its allegedly deceptive letter to insurers. The insurers who received the letter may have relied on the alleged misrepresentations about the plaintiff, but the plaintiff himself could not have relied on them.

In addition, Burzynski did not adequately plead the third element—that the deception occurred in the course of "trade and commerce." "Trade and commerce" is a term of art which is limited to "trade or commerce directly or indirectly affecting the people of [Illinois]." Ill.Rev.Stat. ch. 121½, para. 261(f). The plaintiff does not say why he should be able to sue under an Illinois state statute. His business is in Texas. The only connection to Illinois is that it is Hinshaw Culbertson's place of business, and it is the site of the previous lawsuit between these parties. The court did not err in dismissing this claim under Fed.R.Civ.P. 12(b)(6). We also hold that this dismissal should be with prejudice.

### G. *Racketeer Influenced and Corrupt Organizations (RICO).*

Burzynski has also failed to plead a RICO violation, his last cause of action. The plaintiff alleges RICO violations under 18 U.S.C. § 1962(a), (b), (c), and (d). Boiled down to their essence in plain English, the subsections state:

(a) a person who has received income from a pattern of racketeering cannot invest that income in an enterprise.

(b) a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering.

(c) a person who is employed by or associated with an enterprise cannot conduct the enterprise's affairs through a pattern of racketeering.

(d) a person cannot conspire to violate subsections (a), (b), or (c).

Thus, RICO claims under all four subsections necessitate: "1) a *person* who engages in 2) a *pattern of racketeering activity,* 3) connected to the acquisition, establishment, conduct, or control of an *enterprise." Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 242 (5th Cir.

1988), *cert. denied*, 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989) (emphasis in original).

We conclude that the plaintiff failed to properly plead both a "pattern of racketeering activity" and a RICO "enterprise."

### 1. *RICO person.*

A RICO "person" is the defendant. *Id.* The plaintiff correctly pleaded this first element by naming defendants Hinshaw Culbertson, Aetna, Emprise, Monaco, and John Does I–XXX[1] as RICO "persons."

### 2. *Pattern of racketeering activity.*

] The plaintiff stumbles on the second element—a "pattern of racketeering activity." This element has two components: 1) predicate acts—the requisite racketeering activity, and 2) a pattern of such acts. *Id.* at 242–43.

#### a. *Predicate acts.*

 The plaintiff pleaded acts which could serve as "predicate acts"—mail fraud and wire fraud. 18 U.S.C. § 1961(1). Our guideline for the elements of RICO mail fraud is: 1) a scheme to defraud by means of false or fraudulent representation, 2) interstate or intrastate use of the mails to execute the scheme, 3) the use of the mails by the defendant connected with scheme, and 4) actual injury to the plaintiff. *Landry v. Air Line Pilots Ass'n Int'l*, 901 F.2d 404, 428 (5th Cir.), *cert. denied*, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). The complaint lists the following acts of alleged mail fraud: (1) the Aetna/Hinshaw letter to the insurers; (2) Hinshaw Culbertson's allegedly fraudulent pleadings in *Burzynski I*; (3) Monaco's false federal grant applications for Emprise; (4) the provision of false information about BRI to federal investigators; and (5) Aetna's denial of coverage to its own insureds for BRI claims. The plaintiff has adequately alleged predicate acts.

### b. *In order to allege a "pattern," the acts must be "related" and have "continuity."*

] Assuming that "predicate acts" exist, one still must plead a "pattern" of such acts, which requires the plaintiff to plead both that the predicate acts are related to each other and that they either constitute or threaten long-term criminal activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989); *Landry*, 901 F.2d at 432. In other words, a "pattern" requires both that the acts are "related" to each other and that they have "continuity." *Id.*

 Predicate acts are "related" if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *H.J. Inc.*, 492 U.S. at 240, 109 S.Ct. at 2901 (citing 18 U.S.C. § 3575(e)). Burzynski argues that the acts constitute a pattern of activity with the common purpose of avoiding paying BRI's just insurance claims and putting Burzynski out of business. The predicate acts might be related to the overall scheme of denying BRI claims and putting BRI out of business. Thus, he has adequately pleaded that the predicate acts are related.

The plaintiff, however, did not sufficiently plead the second prong of the "pattern of activity" requirement—continuity. He must be able to plead that the predicate acts amount to or threaten *continuing* racketeering activity. It is "continuity" that assures a federal cause of action. "It refer[s] either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id.* at 241, 109 S.Ct. at 2902.

All of the alleged predicate acts took place during the course of *Burzynski I*: Aetna denied coverage to its own insureds; Hinshaw and Aetna filed the allegedly fraudulent pleadings, *viz.*, the *ex parte* motions and the RICO counterclaim; they

---

**1.** John Does I–XXX are unnamed defendants, including members of the United States government and Aetna consultants and employees.

sent the Aetna/Hinshaw letter under the guise of discovery request. It is also clear that Monaco formed Emprise *after* the *Burzynski I* lawsuit began, and the defendants gave the allegedly false information to federal investigators "to obtain leverage in its civil litigation." *All* of the alleged predicate acts took place as part of the *Burzynski I* litigation, which has ended. In *Delta*, 855 F.2d at 244, we affirmed the dismissal of a RICO claim where the plaintiff alleged multiple acts of fraud that were part and parcel of a single, discrete and otherwise lawful commercial transaction. In *Delta*, the lawful transaction was a merger; here, it is the defense of a lawsuit—which is now over. The conduct did not constitute or threaten long-term criminal activity.

3. *No RICO "enterprise."*

■ A RICO "enterprise" can be either a legal entity or an "association in fact" enterprise. 18 U.S.C. 1961(4). The plaintiff argues that the defendants together constitute an "association in fact" enterprise.

■ Can a "RICO person," in this case Aetna, Hinshaw Culbertson, Monaco, or Emprise, employ or associate with itself? The answer appears to be "no" with respect to a section 1962(c) claim. Under that subsection, the RICO "persons" must be distinct from the RICO "enterprise." *Bishop v. Corbitt Marine Ways, Inc.*, 802 F.2d 122, 123 (5th Cir.1986). The reason is found in the statutory language which speaks of an employee of, or one associated with, an enterprise conducting the "enterprises' affairs through a pattern of racketeering activity...." 18 U.S.C. § 1962(c). Therefore, the district court did not err, on this point alone, in dismissing the section 1962(c) claim.

■ However, for the section (b) RICO claim, the "enterprise" and the "person" can be one and the same. *Landry*, 901 F.2d at 425. Again the statutory language dictates the result. Subsection (b) prohib-

its a person from acquiring or maintaining an interest in an "enterprise" "through a pattern of racketeering activity." 18 U.S.C. § 1962(b). An insider, although a member of the enterprise, can use racketeering activity to maintain or increase his interest in the enterprise.

*The "enterprise" as pleaded fails for lack of "continuity."*

■ An "association-in-fact" enterprise perhaps could have been interpreted broadly to embrace any cooperative endeavor by two or more persons, without regard to its duration—thus embracing even a single transaction. Mindful of the wisdom embodied in the federal structure of our nation, this circuit has eschewed this course.

This court, through then Chief Judge Clark, said in *Delta*, 855 F.2d at 243: "The concept of continuity as a means of controlling the scope of RICO has also been incorporated into the enterprise element of section 1962." [2] The same reasoning appears in Judge Thornberry's opinion in *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir. 1988):

> We affirmed the district court's dismissal of the complaint, holding that "two individuals who join together for the commission of one discrete criminal offense have not created an 'association-in-fact' enterprise, even if they commit two predicate acts during the commission of this offense, because their relationship to one another has no continuity." (quoting *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir.1987).

This principle is deeply imbedded in Fifth Circuit law. *See Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1462 (5th Cir.1991); *Landry*, 901 F.2d at 433; *Manax*, 842 F.2d at 811; *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir.1987).

Plaintiff would have us read his pleadings as follows: The "persons" were Aetna, Monaco, Emprise, and Hinshaw Culbertson. The "pattern of racketeering" was the acts they engaged in during the

---

**2.** As stated previously, continuity is one of the "critical features" of a pattern of racketeering activity. Chief Judge Clark also made this point

in *Delta*: "The critical features of a pattern of racketeering activity are continuity and relationship." *Id.*

course of that litigation. Their purpose was to deny BRI insurance reimbursements and to put it out of business. This should be treated as "activity" looking to the "acquisition, establishment, conduct, or control of an enterprise."

Aetna retained both Monaco and Hinshaw Culbertson for its defense in *Burzynski I*. The defendants performed the alleged predicate acts during the course of that litigation, which began in August 1986 and ended in summary judgment for both sides on March 31, 1992. As pleaded, the "association-in-fact" enterprise lacks the needed continuity.

### 4. *Plaintiff failed to plead additional element of "income" needed for section 1962(a) claim.*

A further element is required for a section 1962(a) claim—the RICO person must have received income from the pattern of racketeering activity and used that income to operate the enterprise. *Elliot v. Foufas*, 867 F.2d 877, 880 (5th Cir.1989). While the achievement of the stated objectives might enhance the "persons' " income in a remote and speculative fashion, it hardly demonstrates a scheme to finance their work with the earnings of BRI. Indeed, the RICO "persons" received no income from their "pattern of activity" which they used to operate the enterprise.[3]

### 5. *Should dismissal of plaintiff's RICO claims be with or without prejudice?*

The foregoing makes clear that on the considered facts the dismissals should be with prejudice. No RICO claim can be based on those facts. This leaves the issue of whether the plaintiff's allegations of a "nationwide scheme conceived and executed by defendants to defraud insured persons and their treating physicians by wrongfully denying health insurance bene-

fits which Aetna and other insurers are lawfully obligated to provide," together with claims of "harassment" and "threatening to institute false claims against doctors," compels either a dismissal without prejudice or a reversal and remand to the district court for trial on the merits.

Here lies the heart of this litigation. The plaintiff has pleaded certain wrongs directed at him and has sought to link his alleged wrongs to a multitude of unnamed others allegedly also wronged in a similar fashion by the defendants. By this means "continuity," "enterprise," and "pattern"—ingredients lacking from the remainder of his pleading—would be supplied.

The difficulty is that the pleading the plaintiff relies on to accomplish this is too general, speculative, and unsupported by facts. To permit it to serve the plaintiff's purposes would allow conclusory pleading to erode the substance of the "continuity," "enterprise," and "pattern" requirements. The defendants could then escape the clutches of RICO only by establishing a negative, *viz.*, that they had not engaged with others in the charged manner. We should avoid imposing such a burden.

At the same time, in the posture of this litigation, we think it would be premature to dismiss the RICO claim with prejudice. The plaintiff should be given an opportunity to amend his pleading to make it conform to the requirements set forth in this portion of the opinion.

Therefore, we affirm the district court's dismissal of the RICO claim without prejudice and remand this portion of our decision to the district court with instructions to permit the plaintiff an opportunity to amend his complaint to plead a valid RICO claim.

### H. *Claims Against Monaco and Emprise.*

The complaint states that the Aetna/Hinshaw letter was written "in consultation

---

**3.** The complaint states that Monaco said she could be retained by alternative health care professionals for legal work. "Thus, it appears that the defendants intended in part to finance part of their overall scheme with the funds of the very practitioners they sought to discredit." This vague allegation does not suffice for a § 1962(a) claim.

with defendant Monaco." We see no reason to treat Monaco and Emprise differently from the other defendants in respect to those claims in which they are named and joined with the other defendants.

## III.

### DISPOSITION

It is now time to move this case off high center and get it back on a highway which, if not a modern freeway, will bear some resemblance to those two lane, "hogback" macadam roads that began to appear during the same era in which, as I pointed out above, even my father sometimes got stuck on a high center.

Thus, we grant the motion for rehearing and affirm the dismissal without prejudice under Fed.R.Civ.P. 12(b)(6) of the RICO claim and remand to the district court to permit the plaintiff to attempt to amend his pleadings to state a claim. We reverse the dismissals without prejudice and remand to the district court for proceedings on the merits of the claims for: (1) tortious interference with contract, (2) tortious interference with prospective business relations, and (3) business disparagement. Finally, we reverse the dismissals without prejudice and remand to the district court to enter judgment dismissing the claims for failure to state a cause of action of: (1) abuse of process, (2) violation of the Texas Insurance Code Article 21.21, and (3) violation of the Illinois Consumer Fraud and Deceptive Practices Act.

MOTION FOR REHEARING GRANTED:

UPON RECONSIDERATION,

AFFIRMED IN PART;

REVERSED IN PART AND REMANDED FOR PROCEEDINGS ON THE MERITS;

REVERSED IN PART AND REMANDED FOR JUDGMENT FOR DEFENDANTS.