Donna WHALEY, Plaintiff,

v.

**AUTO CLUB INSURANCE ASSOCIATION, a Michigan Corporation, Defendant.**

No. 95–CV–70713–DT.

United States District Court,
E.D. Michigan,
Southern Division.

July 5, 1995.

John W. Mason, Jeffrey S. Burg, Dearborn, MI, for plaintiff Donna Whaley.

Dickinson, Wright, Moon, Van Dusen & Freeman by Lawrence G. Campbell, Kenneth J. McIntyre, Mary Beth Kelly, Detroit, MI, for defendant Auto Club Ins. Ass'n.

*ORDER AND OPINION OF THE COURT*

GILMORE, District Judge.

This case presents a statute interpretation dispute between defendant, Auto Club Insurance, and one of its salaried Sales Account Representatives (SARs), plaintiff Donna Whaley. The statute at issue is Chapter 33 of the Michigan Insurance Code, Mich.Comp. Law. § 500.3301 et seq.—which in part requires all automobile insurance companies licensed to do business in the state to be a participating member in the Michigan Automobile Insurance Placement Facility ("MAIPF"). A brief description of the MAIPF is necessary for a better understanding of this case.

The MAIPF is, in essence, an assigned risk pool. Persons who would otherwise be unable to obtain automobile insurance through conventional means can apply for insurance through the MAIPF. Pursuant to Mich.Comp.Law. § 500.3355(a), all agents who are licensed to sell insurance must offer to place an otherwise uninsurable applicant in the MAIPF. The statute further provides as follows:

> Every agent who is authorized to solicit, negotiate or effect automobile insurance on behalf of any participating member shall:
>
> *   *   *   *   *   *
>
> (c) Be entitled to receive, and any participating member be entitled to pay, a commission for placing insurance through the facility (MAIPF) at the uniform rates of commission as provided in the plan of operation.

Mich.Comp.Law. § 500.3355.

Notwithstanding the language of Mich. Comp.Law. § 500.3355(c), Auto Club has promulgated a company-wide policy that denies such commissions to its Sales Account Representatives (SARs), because SARs already receive a salary for conducting MAIPF work. Consequently, when an MAIPF insurance policy is placed by a salaried agent, Auto Club itself accepts the commission for the sale.

In a four-count complaint filed in this court, plaintiff charged that Auto Club's policy of denying commissions to its salaried

SARs violated the Racketeer Influenced and Corrupt Organizations Act (RICO), under 18 U.S.C. § 1962(b) and (c). Plaintiff sought to proceed in this court on behalf of herself and all other similarly situated SARs.

Originally, the parties were before this court on plaintiff's class certification motion. At that time, this court expressed doubts about the viability of the RICO claims and ordered the parties to show cause why the case should not be dismissed for lack of subject matter jurisdiction. After listening to oral argument, and carefully reviewing the pleadings, this court now dismisses all four counts of the plaintiff's complaint for failure to state a civil claim under RICO.

## I

In order to state a civil claim under RICO, plaintiff must allege that her business or property was injured by a violation of 18 U.S.C. § 1962. *See* 18 U.S.C. § 1964(c). In this case, plaintiff asserts that defendant has violated subsections (b) and (c) of § 1962, which require that defendant gain an interest in an enterprise or conduct an enterprise's affairs through a pattern of racketeering activity. 18 U.S.C. § 1962(b), (c). Here, plaintiff's complaint alleges numerous acts of mail fraud and extortion, both of which are prohibited racketeering activities. 18 U.S.C. § 1961(1)(A). This court, however, seriously doubts that either mail fraud or extortion is present in this case.

Mail fraud requires intentional misrepresentations reasonably calculated to deceive persons of ordinary prudence. 18 U.S.C. § 1341; *Dana Corp. v. Blue Cross & Blue Shield,* 900 F.2d 882, 885 (6th Cir.1990); *Bender v. Southland Corp.,* 749 F.2d 1205, 1215–16 (6th Cir.1984). Extortion requires the obtaining of property through the wrongful use of threatened violence, force, or fear. 18 U.S.C. § 1951(b)(2); *see also Sutherland v. O'Malley,* 882 F.2d 1196, 1202 (7th Cir. 1989). This court cannot find any evidence of wrongful threats or an intentional scheme to defraud. Instead, the pleadings show that this case presents nothing more than a good faith dispute as to how a state statute should be interpreted.

Auto Club interprets Mich.Comp.Law. § 500.3355(c) as being inapplicable to salaried agents because, in essence, their salary adequately compensates them for their MAIPF work. Plaintiff, on the other hand, asserts that *every* agent, salaried or commissioned, is entitled to receive MAIPF commissions. This court finds both interpretations plausible; therefore, there is a good faith dispute as to whether or not Auto Club is required to allow SARs to retain their MAIPF commissions in addition to their salaries. Mailings and company policies based on a good faith dispute as to how a particular statute should be interpreted cannot constitute intentional or reckless misrepresentations sufficient for mail fraud nor are they sufficient to make out a claim for extortion. For these reasons, plaintiff cannot establish that defendant has committed the requisite predicate acts to support her federal claims.

Even if plaintiff could establish the elements of mail fraud and/or extortion, she is nevertheless unable to show how she was injured by a violation of § 1962(b) or how this alleged racketeering activity violated § 1962(c); both of which are necessary to support her federal claims.

## II

Under 18 U.S.C. § 1962(b), it is unlawful for any person to acquire control or interest in an interstate enterprise through the use of racketeering activity. Plaintiff's complaint identifies Auto Club as the "person" violating RICO, and both Auto Club and the MAIPF as the "enterprises" being infiltrated. *See* 18 U.S.C. § 1961(3), (4) (defining the terms "person" and "enterprise.") Specifically, plaintiff claims that Auto Club is using mail fraud and extortion to maintain control of the SARs' commissions, which is in turn allowing Auto Club to acquire an interest in both itself as an enterprise and the MAIPF as an enterprise.

The type of "interest" contemplated in § 1962(b) is not just any "interest" but a proprietary one, such as the acquisition of stock, and the "control" contemplated is the power gained over an enterprise's operations by acquiring such interest. *See Reves v. Ernst & Young,* 507 U.S. ——, ——, 113

S.Ct. 1163, 1171, 122 L.Ed.2d 525, 536–37 (1993) (discussing how the congressional intent of § 1962(b) was to prevent racketeers from acquiring control of businesses); *see also Teague v. Bakker*, 35 F.3d 978, 994–95 n. 23 (4th Cir.1994) *cert. denied,* —— U.S. ——, 115 S.Ct. 1107, 130 L.Ed.2d 1073 (1995) (upholding jury instruction that the "interest" contemplated by § 1962(b) meant acquiring stock or ownership equity and also entailed gaining "actual day-to-day involvement in the management and operation" of the enterprise.) Therefore, in order to plead that Auto Club violated § 1962(b), plaintiff must show that the alleged misappropriation of the SARs' commissions allowed Auto Club to gain a proprietary interest in either the MAIPF or Auto Club itself as an enterprise.

### A. *The MAIPF as the Enterprise*

If the MAIPF is the enterprise, Auto Club's alleged racketeering activity does not violate § 1962(b), because Auto Club did not gain or maintain any control or interest in the MAIPF through its racketeering activity. Auto Club is statutorily mandated to participate in the MAIPF, so its position as a participating member was not obtained through the use of mail fraud or extortion. *See* Mich.Comp.Law. § 500.3355. While Auto Club is alleged to have members on the MAIPF's board of governors, who in turn can control the MAIPF's operations, these members acquired their positions either through appointment or election, not through the alleged misappropriation of the SARs' commissions. *See* Mich.Comp.Law. § 500.3310. Even Auto Club's voting power in the MAIPF is not affected by the alleged racketeering activity, for while each member's vote is weighted, the weight is determined by how many non-MAIPF policies the company writes during a given year, rather than by the amount of MAIPF commissions it collects. *See* Mich.Comp.Law § 500.3303(e)(iii). Therefore, plaintiff has failed to show that Auto Club gained any control over the MAIPF through racketeering activity, and thus there can be no violation of 18 U.S.C. § 1962(b).

### B. *Auto Club as the Enterprise*

There is a question as to whether Auto Club can violate § 1962(b) by acquiring an interest in itself as an enterprise or whether it needs to acquire an interest in a distinctly separate company. The Sixth Circuit has not ruled on this issue, and there are split district court decisions. Because of the confused state of the law, this court will briefly explain why it finds that Auto Club can acquire an interest in itself as an enterprise for purposes of § 1962(b).

In order to violate 18 U.S.C. § 1962(b) there is only one main requirement: the defendant must acquire control or interest in an enterprise through racketeering activity. In order to violate 18 U.S.C. § 1962(c), on the other hand, there are two requirements: the defendant must conduct an enterprise's affairs through a pattern of racketeering activity and the defendant must be "employed by or associated with" that enterprise. Consequently, due to this second requirement, virtually all courts have determined that a defendant needs to be distinctly different from the enterprise for purposes of § 1962(c), because in order for a person to be "employed by or associated with" an enterprise, he logically has to be a separate entity. *See Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1489 (6th Cir.1989); *McCullough v. Suter,* 757 F.2d 142, 144 (7th Cir.1985) (holding that there has to be a distinction between the defendant and enterprise, because "a person cannot logically associate with himself"); *Haroco v. American Nat. B. & T. Co. of Chicago,* 747 F.2d 384, 400 (7th Cir.1984) *aff'd on other grounds,* 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *Hirsch v. Enright Refining Co.,* 751 F.2d 628, 633 (3d Cir.1984).

The question facing this court is whether this § 1962(c) "distinction" requirement applies to claims under § 1962(b), even though § 1962(b) does not have a separate "defendant associated with an enterprise" prerequisite. At least one court has held that there needs to be a distinction between a defendant and an enterprise for purposes of § 1962(b), because just as a defendant can not logically associate with himself, he cannot logically acquire an interest in himself. *See In Re*

*Tucker Freight Lines, Inc.,* 789 F.Supp. 884, 892 (W.D.Mich.1991).

However, this logic is faulty because a defendant can in fact acquire an interest in itself as an enterprise. For example, there is no dispute that a corporation fits under both RICO definitions of what constitutes a person and what constitutes an enterprise. *See* 18 U.S.C. 1961(3), (4). There is also no doubt that a corporation will in many instances only own a certain percentage of its stock. Therefore, a corporation can be an entire enterprise under RICO, yet only control a certain number of its shares. If, through racketeering activities like extortion, the corporation was able to acquire additional shares of its stock, it could gain or maintain greater control over itself as an enterprise. Such a result could in many instances give a corporation a competitive advantage over its rivals. Certainly, such wrongdoing falls within the scope of § 1962(b). To hold otherwise would ignore the intent of Congress and reward the very companies that used racketeering activities to gain an unfair competitive advantage. *See Sedima, S.P.R.L. v. Imrex Co., Inc.,* 473 U.S. 479, 514, 105 S.Ct. 3275, 3299, 87 L.Ed.2d 346 (1985) (Marshall, J., dissenting).

The weight of authority also supports this conclusion. *See In re Burzynski,* 989 F.2d 733, 743 (5th Cir.1993); *Busby v. Crown Supply, Inc.,* 896 F.2d 833, 841–41 (4th Cir. 1990); *Landry v. Air Line Pilots Ass'n Int'l,* 901 F.2d 404, 425 (5th Cir.1990), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1165 (3d Cir.1989); *Wilcox v. First Interstate Bank of Oregon,* 815 F.2d 522, 529 (9th Cir.1987); *Petro–Tech, Inc. v. Western Co.,* 824 F.2d 1349, 1361 (3d. Cir. 1987); *Liquid Air Corp. v. Rogers,* 834 F.2d 1297, 1307 (7th Cir.1987), *cert. denied,* 492 U.S. 917, 109 S.Ct. 3241, 106 L.Ed.2d 588 (1989); *Schreiber Distrib. Co. v. Serv–Well Furniture Co., Inc.,* 806 F.2d 1393, 1398 (9th Cir.1986); *Hilliard v. Shell Western E & P, Inc.,* 836 F.Supp. 1365, 1373 (W.D.Mich. 1993).

Therefore, because Auto Club could use the commissions it allegedly misappropriated to maintain or acquire an interest in itself as an enterprise, this court holds that plaintiff sufficiently plead a violation of 18 U.S.C. § 1962(b).

### III

However, according to 18 U.S.C. § 1964(c), plaintiff can only seek a civil remedy under RICO if her business or property was injured by reason of the § 1962(b) violation. Contrary to plaintiff's assertion, one does not violate § 1962(b) by committing mail fraud or extortion. Instead, one must use racketeering activity to gain control or interest in an enterprise. In other words, plaintiff cannot simply allege that she was injured by the underlying acts of mail fraud and extortion. Rather, she must allege that she was injured by a violation of § 1962(b). In this case, in order to be injured by a violation of § 1962(b), plaintiff must show that her alleged injuries resulted from Auto Club having maintained an interest in itself as an enterprise.

The Supreme Court's decision in *Sedima, S.P.R.L. v. Imrex Co., Inc.* does not compel a contrary conclusion. 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). In *Sedima,* the Court ruled that "if the defendant engages in a pattern of racketeering activity in a manner forbidden by these provisions, and the racketeering activity injures the plaintiff in his business or property, the plaintiff has a claim under § 1964(c)." 473 U.S. at 495, 105 S.Ct. at 3284. Although *Sedima* would appear to allow plaintiff to have standing for injuries caused solely by Auto Club's alleged mail fraud and extortion, *Sedima* was interpreting § 1962(c), a subsection which is violated when a person causes an enterprise to conduct its business through a pattern of racketeering. *See Tucker,* 789 F.Supp. at 891. In other words, in almost every § 1962(c) violation, "the compensable injury necessarily is the harm caused by the predicate acts." *Sedima,* 473 U.S. at 497, 105 S.Ct. at 3285. Significantly, the Supreme Court limited its holding by noting that:

> Conducting an enterprise that affects interstate commerce is obviously not in itself a violation of § 1962, *nor is mere commissions of predicate offenses.* In addition, the plaintiff only has standing if, and can

only recover to the extent that, *he has been injured by the conduct constituting the violation.*

*Id.* at 495, 105 S.Ct. at 3284 (emphasis added).

In other words, *Sedima* merely held that a plaintiff need not allege an injury above and beyond that caused by the predicate offenses, if the predicate offenses, by themselves, constitute the behavior which violates § 1962. *See Tucker,* 789 F.Supp. at 891. However, unlike § 1962(c), the use of mail fraud and extortion do not standing alone constitute a violation of § 1962(a) or (b), because these subsections require that a defendant commit racketeering activity and then use the proceeds of that activity to invest in or acquire an interest in an enterprise. Consequently, post-*Sedima* cases analyzing claims under § 1962(a) and (b) still require that a plaintiff's injuries stem not from the racketeering activity itself, but from the investment or the interest obtained in an enterprise as a result of that racketeering activity. *See Craighead v. E.F. Hutton & Co., Inc.* 899 F.2d 485, 494 (6th Cir.1990); *Danielsen v. Burnside–Ott Aviation Training Center,* 941 F.2d 1220, 1230–31 (D.C.Cir.1991); *Standard Chlorine of Delaware, Inc. v. Sinibaldi,* 821 F.Supp. 232, 246–47 (D.Del.1992).

Here, the injury plaintiff alleges is economic losses occasioned by the denial of MAIPF commissions. This loss was caused, if at all, by Auto Club's alleged racketeering activity (mail fraud and extortion) rather than by defendant's alleged ability to acquire an interest in itself as an enterprise. For example, plaintiff does not suggest, and nothing in the evidence indicates, that "but for" Auto Club maintaining an interest in itself, a new company would have acquired control of Auto Club and consequently dropped the "no commission" policy, or that Auto Club would have gone out of business. *See, e.g., Newmyer v. Philatelic Leasing, Ltd.,* 888 F.2d 385, 396 (6th Cir.1989) *cert. denied,* 495 U.S. 930, 110 S.Ct. 2169, 109 L.Ed.2d 499 (1990) (refusing to dismiss case where plaintiff could potentially show that he was injured by investment of racketeering proceeds to continually finance defendant's fraudulent scheme). *But see Tucker,* 789 F.Supp. at 892

(dismissing case where injury was indisputably caused by the racketeering activity.) Based on the foregoing, it is clear that plaintiff cannot establish a compensable injury for purposes of § 1962(b). Accordingly, plaintiff cannot set forth a claim for relief under 18 U.S.C. § 1962(b) and counts I and II of plaintiff's complaint will be dismissed.

## IV

█ Counts III and IV will likewise be dismissed, because they fail to state a claim under 18 U.S.C. § 1962(c). Under § 1962(c), it is unlawful for any person employed by or associated with an interstate enterprise to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. The Supreme Court has ruled that in order to affect the conduct of an enterprise's affairs, the defendant must play a part in the operation and management of the company. *Reves,* 507 U.S. at ——, 113 S.Ct. at 1170, 122 L.Ed.2d at 536–37. Plaintiff alleges that Auto Club is associated with an enterprise by virtue of being a member of the MAIPF. Plaintiff further alleges that Auto Club plays a role in the management of the MAIPF's affairs because it has representatives on the MAIPF's board of governors. Finally, plaintiff alleges that Auto Club conducted the MAIPF's affairs through a pattern of racketeering activity.

This court disagrees. Plaintiff has failed to demonstrate how Auto Club is conducting the MAIPF's affairs through a pattern of racketeering activity. Although Auto Club is on the board of governors of the MAIPF, its responsibilities as a board member are limited to managing the processing of applications and the distribution of commissions. *See* Mich.Comp.Law § 500.3330. It has not implemented a MAIPF policy denying commissions to salaried agents, and it has not changed procedures to reach that result.

█ As an alternative argument, plaintiff maintains that Auto Club is indirectly causing the MAIPF's affairs to be conducted through a pattern of racketeering activity, because the MAIPF is being used to further Auto Club's alleged mail fraud scheme. For example, part of this alleged scheme includes

an Auto Club policy that requires SARs to write "Auto Club" as the producer on all applications mailed to the MAIPF, even though the individual SARs are the real producers of the applications. Since the MAIPF sends commission checks to whomever is designated on the applications, these checks are being sent directly to Auto Club, thus completing Auto Club's alleged scheme to misappropriate the SARs' commissions.

This is not a RICO violation under § 1962(c). In order to state a claim under § 1962(c), the defendant must operate the affairs of an enterprise through a pattern of racketeering activity. *Reves*, 507 U.S. at ——, 113 S.Ct. at 1170, 122 L.Ed.2d at 537. In other words, the alleged racketeering activity must bear some nexus to the defendant's participation in the management of the enterprise.

In this case, there is absolutely no nexus between the alleged racketeering and Auto Club's participation in the management of the MAIPF. For example, if Auto Club was not statutorily mandated to be a part of the MAIPF, and did not serve on the MAIPF's board of governors, it could not violate § 1962(c), because it would not participate in the management of the MAIPF's affairs. *See Reves*, 507 U.S. at ——, 113 S.Ct. at 1170, 122 L.Ed.2d at 537. Nevertheless, Auto Club could still acquire the SARs' commissions, because the MAIPF would still send checks to whomever is designated on the applications. In other words, Auto Club's position on the MAIPF's board of governors has no effect on its ability to acquire the SARs' commissions. Accordingly, Auto Club's alleged racketeering activity bears no nexus to its conduct of the MAIPF's affairs. Therefore, plaintiff has failed to state a claim for relief under § 1962(c), because she has failed to demonstrate that Auto Club conducted the MAIPF's affairs through a pattern of racketeering activity. For this reason, counts III and IV of plaintiff's complaint will be dismissed.

## V

The court having determined that plaintiff's complaint fails to state a claim under either 18 U.S.C. § 1962(b) or (c), it is hereby ordered that plaintiff's complaint is dismissed. It is further ordered that plaintiff's motion for class certification and defendant's motion to stay proceedings based on the doctrine of primary jurisdiction are denied as moot.