819 F.2d 151
 55 USLW 2704, 1987-1 Trade Cases 67,580,
RICO Bus.Disp.Guide 6633
 BLOUNT FINANCIAL SERVICES, INC., a corporation; BFS
Finance, Inc., a corporation; David Aultom and
Jean Aultom, Plaintiffs-Appellants,
v.
WALTER E. HELLER AND COMPANY, a foreign corporation and
Lowell Crabtree, Defendants-Appellees.
 No. 86-5342.
 United States Court of Appeals,
Sixth Circuit.
 Argued April 16, 1987.
Decided May 27, 1987.
 
 Philip R. Russ, argued, Amarillo, Tex., James D. Fox, Knoxville, Tenn., for plaintiffs-appellants.
 L. Caesar Stair III, Knoxville, Tenn., Rene A. Torrado, argued, Chicago, Ill., W. Morris Kizer, argued, L. Crabtree, Knoxville, Tenn., for defendants-appellees.
 Before MERRITT and NELSON, Circuit Judges, and CONTIE, Senior Circuit Judge.
 MERRITT, Circuit Judge.
 
 
 1
 Plaintiffs sue the two defendants for violation of the Sherman Act and the Racketeer Influence and Corrupt Organizations Act, "RICO," in an action arising from a financing contract in which the defendant, Heller, loaned money to plaintiffs for their industrial thrift operations. The contract provided for interest based on adjusting upward the rate that the Continental Illinois Bank charged its most credit worthy customers. The gravamen of the case is that plaintiff was forced out of business because Heller charged a rate of interest which was illegal under the contract between the parties.
 
 
 2
 We agree with the District Court's Rule 12(b)(6) decision that the complaint fails to state a cause of action under the Sherman Act and RICO, 632 F.Supp. 240. Stripped to the essential facts found in the allegations of the antitrust claim, the complaint alleges simply that Heller breached its contract with plaintiff by withdrawing from the financing arrangement and doing business with another financial institution in the same area. Under the controlling antitrust principles concerning refusal to deal stated in Dunn & Mavis, Inc. v. New-Car Driveaway, Inc., 691 F.2d 241 (6th Cir.1982), the antitrust complaint in the instant case is defective and fails to state a claim. The antitrust complaint states no facts constituting an injury to competition but states only that the defendant Heller replaced one thrift institution with another as its business associate in the area.
 
 
 3
 The complaint likewise fails to state a valid civil RICO claim for the predicate offenses of "unlawful debt" under Sec. 1961(6)(B), Title 18, and mail fraud under Sec. 1961(1). Section 1961(6) does not criminalize interest rates based on the prime rate unless the rate is twice the usurious rate under state or federal law. There are no facts alleged in the instant complaint which would bring the case in question within the requirement of twice the usurious rate under the last clause of Sec. 1961(6)(B).
 
 
 4
 On the mail fraud RICO allegation, the complaint fails to state the nature of the fraud which gives rise to the predicate offense of mail fraud. The fact that the parties take different positions under the contract as to the appropriate prime rate, or the fact that the defendant charged too high a "prime rate" and thereby concealed or refused to disclose what the plaintiff considers the true prime rate called for under the contract, does not give rise to a valid claim for fraud. Fraud alleged in a RICO civil complaint for mail fraud must state with particularity the false statement of fact made by the defendant which the plaintiff relied on and the facts showing the plaintiff's reliance on defendant's false statement of fact. The plaintiff has not alleged with particularity any such false statement of fact and therefore the District Court was correct in dismissing the complaint. Sending a financial statement which misconstrues the prime rate provided by the terms of the contract may breach the contract but it does not amount to a RICO mail fraud cause of action. Rule 9(b) requiring "averments of fraud ... with particularity" is designed to allow the District Court to distinguish valid from invalid claims in just such cases as this one and to terminate needless litigation early in the proceedings.
 
 
 5
 Even assuming that Heller knew that Continental Illinois Bank was charging a lower than advertised prime rate to some of its best borrowers, and that it concealed that fact from plaintiffs, that would not state a cause of action for RICO mail fraud. In United States v. Van Dyke, 605 F.2d 220, 225 (6th Cir.), cert. denied, 444 U.S. 994, 100 S.Ct. 529, 62 L.Ed.2d 425 (1979), this Court recognized that in order to establish a scheme to defraud, which is an essential element of mail fraud, there must be proof of misrepresentations or omissions which were "reasonably calculated to deceive persons of ordinary prudence and comprehension."
 
 
 6
 Heller's decision to charge a rate of interest based on Continental's advertised prime rate could not have been reasonably calculated to deceive a business entity such as Blount Financial "of ordinary prudence and comprehension." Heller is a separate and distinct entity from Continental Illinois and is therefore in no better position than Blount to obtain information about Continental Illinois' prime rate. Put another way, Blount was in as good a position as Heller to discover the "true" prime rate. An ordinary and prudent business person in the financial field would not have merely accepted Heller's quotation of the prime rate, but would have verified the rate independently. Blount's reliance and inaction were unreasonable and therefore prevent it from establishing that Heller's conduct was "reasonably calculated" to deceive the ordinary business person. In this business setting, Blount at most has a breach of contract action.
 
 
 7
 Accordingly, the judgment of the District Court is affirmed.