**Donald G. HEDEN, Plaintiff,**

v.

**Dale HILL, et al., Defendants.**

**Civil Action No. H–94–4095.**

United States District Court,
S.D. Texas.

Aug. 13, 1996.

Randall O. Sorrels, Abraham, Watkins, Nichols, Ballard & Friend, Houston, TX, for Plaintiff.

Paul J. McConnell, III, DeLange & Hudspeth, L.L.P., Houston, TX, for defendants Adam, Nowickzewski, and Ultra Lite Manufacturing, Inc.

Glenn Donald Phillips, Hearne & Phillips, L.L.P., Kilgore, TX, for defendants Hill, GHB Patent, Inc., Everlite, Inc., and Alumatech Corp.

D. Arlon Groves, D. Arlon Groves, P.C., Houston, TX, pro se.

### ORDER OF ADOPTION

HITTNER, District Judge.

This court has reviewed the Memorandum and Recommendation of the United States Magistrate Judge signed July 19, 1996. The court finds the Memorandum and Recommendation should be, and the same is hereby, adopted as the court's Memorandum and Order. Accordingly, it is

ORDERED that the Motion for Summary Judgment is GRANTED with respect to Heden's claims of slander and violation of the Racketeer Influenced and Corrupt Organizations Act and DENIED with regard to Heden's claims for declaratory judgment as to the ownership of the patent, constructive fraud, common law fraud and coercion, tortious interference with business relations, civil conspiracy, and libel and defamation.

### MEMORANDUM AND RECOMMENDATION

CRONE, United States Magistrate Judge.

#### I. Introduction

Pending before the Court is Defendant D. Arlon Groves ("Groves") Motion for Summary Judgment (# 103).

Defendant Groves seeks summary judgment on Donald G. Heden's ("Heden") claims for declaratory judgment regarding the ownership of the invention/patent, constructive fraud, common law fraud and coercion, interference with business relations, civil conspiracy, libel, slander and defamation, and violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO").

Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, this court recommends that Groves's Motion for Summary Judgment be GRANTED IN PART and DENIED IN PART.

#### II. Background

According to the Third Amended Complaint, at some time prior to 1988, Plaintiff Donald G. Heden ("Heden") created a new design for a round-bottom, dump truck body/trailer made of aluminum. In confidence, Heden disclosed to Hill, who was in the trailer manufacturing business, his trailer design. In 1988, Heden and Hill agreed to develop, as equal partners, a venture to manufacture Heden's design. Hill was to be responsible for obtaining and/or providing sufficient capital for the formation of a new company to manufacture, market, and sell commercial units of the invention. In late 1988 and early 1989, Hill requested that Joseph Nowiczewski ("Nowiczewski") and Robert J. Adam ("Adam") be included as equal owners to finance the venture.

In 1989, Heden, Hill, Nowiczewski, and Adam agreed to incorporate the venture under the name Ultra Lite Manufacturing, Inc. ("Ultra Lite"). Articles of Incorporation were filed on April 5, 1989, with the Texas Secretary of State, creating four classes of stock, with each owner to receive a different class: 10,000 class A shares to Hill; 10,000 class B shares to Nowiczewski; 10,000 class C shares to Heden; and 10,000 class D shares to Adam. Nowiczewski was President of Ultra Lite. Adam was ultimately named Chairman of the Board, and Hill was the Chief Executive Officer. At some point in 1989, Heden retained Neal J. Mosely ("Mosely"), a patent attorney, to pursue an application for a patent on his trailer design.

According to Heden, a significant amount of money was spent improving the fabrication plant on Sellers Road between May and September 1989. The plant was owned by Nowiczewski and leased to Ultra Lite. Numerous dump truck bodies and trailers, using Heden's design, were fabricated and sold from March 1989 to June 1990. In the Summer of 1990, Ultra Lite began to suffer financial problems, which, according to Heden, resulted from wasteful spending of corporate assets by Nowiczewski and Hill. Heden further claims that Adam failed to fulfill his investment commitment of $100,000.00 in the corporation. Ultimately, the fabrication

plant was shut down and the business was closed due to a lack of funds.

Heden contends that despite the fact he was named director, several meetings were held by Hill, Adam, and Nowiczewski, without Heden being notified or invited. According to Heden, the meetings were held to discuss a plot to close the company, drive it into bankruptcy, and sell the assets of Ultra Lite, including any patent rights, to Hill. Heden alleges that one such meeting was held on August 20, 1990. Heden claims that, shortly after the meeting, Hill sought the assistance of an attorney, Groves.

On October 30, 1990, Groves contacted Mosely by letter requesting files relating to the dump trailer/dump body invention, including the patent application. Groves represented in the letter that his office had been engaged by Ultra Lite for the purpose of obtaining the files. Groves stated in the letter that this was necessitated by Mosely's failure to deliver the files when requested by Nowiczewski, the President of Ultra Lite. Mosely responded by letter on November 1, 1990, stating that he considered Heden to be his client, not Ultra Lite. Mosely declined to release the files unless jointly instructed by Heden and Ultra Lite as to their disposition. Mosely also stated in the letter that if he did not have a joint resolution of the matter or a withdrawal of Groves's claim to the files by November 9, 1990, he would turn the files over to the court and file an action for interpleader and declaratory judgment. On November 6, Heden authorized Mosely by facsimile to release the files to Ultra Lite. Heden specifically stated in his authorization that he did not give Ultra Lite or any of its stockholders any right of ownership to any of his intellectual property or any of his interest or claims to the ownership of the dump truck design or any other designs. After Mosely released the files to Groves, Heden alleges that Groves changed the application from a sole inventorship application in Heden's name to a joint inventorship application naming Hill first and Heden second, without consulting Heden or investigating the true inventorship of the design. Subsequently, on January 18, 1991, Groves mailed the application to the Patent and Trademark Office ("PTO").

Heden alleges that Hill sought the assistance of Groves to exploit Heden's invention. On January 14, 1991, Groves incorporated Alumatech, Inc. ("Alumatech"). According to Heden, Hill was the sole owner of Alumatech at the time of incorporation. Groves was listed as the initial and sole director of Alumatech. One of Alumatech's purposes, listed in its Articles of Incorporation, was "[t]o manufacture, have manufactured, market, sell, advertise and otherwise promote lightweight, high strength, container/transporter systems such as trailers...."

In November 1990, Ultra Lite filed for bankruptcy protection. Heden contends that in January or February 1991, Hill made a proposal to Nowiczewski and Adam to buy all of the assets of Ultra Lite. According to Heden, this proposal included a plan for the sale of the corporation's ownership interests in all assignments of patent rights it might have. Heden further claims that the plan called for the payment of a sum certain to each of the directors on each unit sold by Hill, his successors, or assigns up to one-half the amount of each of Adam's and Nowiczewski's initial investment in Ultra Lite, as well as royalties. Heden contends that when he learned of the proposal, he informed Hill, Nowiczewski, and Adam that he was opposed to it. Heden also claims that Hill did not fully disclose his personal interest in the proposal, specifically, that he had incorporated a new company, Alumatech, to engage in the same type of business as Ultra Lite.

Heden alleges that Nowiczewski and Adam agreed to Hill's proposal without an investigation and without knowledge of the actual worth of the corporation and its assets. In addition, Heden claims that Nowiczewski accepted Hill's representation of the value of Heden's invention without seeking further information and without ordering an appraisal. Heden refused to sign the agreement memorializing Hill's proposal. Heden alleges that as a result of his refusal, Hill, Nowiczewski, and Adam conspired to create the documents necessary to record the transfer of Heden's rights to his invention. Heden claims that a document entitled "Action of

the Board of Directors of Ultra Lite Manufacturing, Inc. Without First Meeting" was created, and the signature of Heden was forged or in some other manner added to the signature line of the document by other than Heden's hand and without his consent. Additionally, Heden contends that in 1990 up through the date of the sale of the assets of Ultra Lite, Hill agreed with Heden to refinance the company so that he and Hill could proceed with the development of the invention as equal owners. Heden maintains that Hill breached this agreement.

Heden further alleges that without his consent, Hill, Nowiczewski, and Adam signed an agreement on February 9, 1991, to transfer Ultra Lite's patent rights to Hill in exchange for royalty payments of $100 per dump trailer to Adam, Nowiczewski, and Heden. Heden alleges that he did not sign this agreement. Heden also contends that Hill agreed his payments would be put into an escrow account. Heden asserts that although Alumatech grossed over $9.6 million in sales in its first year of operation, 1993 to 1994, and Adam and Hill have received thousands of dollars in royalties, no payments have been made to him or to an escrow account for his benefit.

On January 22, 1993, the PTO notified Heden that a patent application was filed on January 18, 1991, in the name of "Hill and Heden." Heden requested a copy of the file on February 10, 1993, but due to delays by the PTO, he did not receive it until January 3, 1995. The patent on Heden's invention was issued on October 3, 1995, naming Hill and Heden as joint inventors, with Hill's name appearing before Heden's.

Heden initiated this action in state court on October 10, 1994. Groves removed the case to this court. Heden subsequently filed his third amended complaint seeking a declaratory judgment that he is the sole owner of the invention and/or the patent. Heden also asserts claims of unjust enrichment, constructive fraud, common law fraud and coercion, constructive trust, interference with business relations, civil conspiracy, breach of director's duties to the corporation, usurping corporate opportunities, libel, slander, and defamation, RICO violations, and breach of contract.

On June 18, 1996, Heden, Adam, Nowiczewski, and Ultra Lite filed an Agreed Motion for Entry of Judgment notifying the court that they had settled and compromised their differences. Subsequently, on June 20, 1996, United States District Judge David Hittner signed a Final Judgment as to Heden's claims against Adam, Nowiczewski, and Ultra Lite.

### III. *Analysis*

#### A. *The Standard for Summary Judgment*

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for his motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which he believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.1988). Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514–15; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The controverted evidence must be viewed in the light most favorable to the non-movant and all reasonable doubts must be resolved against the moving party. *Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 402 n. 5, 112 L.Ed.2d 349 (1990); *Anderson,*

477 U.S. at 255, 106 S.Ct. at 2513–14; *Judwin Properties, Inc. v. United States Fire Ins. Co.*, 973 F.2d 432, 435 (5th Cir.1992). Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552. "In such situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. at 2552.

### B. *Declaratory Judgment Regarding Ownership of Invention/Patent*

Although Heden cannot seek to have Hill's name removed from the issued patent, he is not foreclosed from obtaining a declaration that he is the sole inventor of the aluminum dump truck design in dispute. Groves, on the other hand, in his motion for summary judgment, seeks to have the ownership of the patent declared to be joint as a matter of law.

The right to obtain a patent for an invention arises in favor of the inventor. *See Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 526 n. 8, 92 S.Ct. 1700, 1706 n. 8, 32 L.Ed.2d 273 (1972); *Motion Picture Patents Co. v. Universal Film Mfg. Co.*, 243 U.S. 502, 512, 37 S.Ct. 416, 419, 61 L.Ed. 871 (1917); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed.Cir.1995), *aff'd*, ── U.S. ──, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996); *Atari Games Corp. v. Nintendo of Am., Inc.*, 897 F.2d 1572, 1576 (Fed.Cir.1990); *Paper Converting Mach. Co. v. Magna–Graphics Corp.*, 745 F.2d 11, 16 (Fed.Cir.1984); *Wailes Dove–Hermiston Corp. v. Oklahoma Contracting Co.*, 48 F.2d 901, 902 (N.D.Tex.1931), *aff'd*, 56 F.2d 143 (5th Cir.1932); *Sim Kar Lighting Fixture Co. v. Genlyte, Inc.*, 906 F.Supp. 967, 972 (D.N.J.1995); *University Patents, Inc. v. Kligman*, 762 F.Supp. 1212, 1218–19 (E.D.Pa.1991). An application for a patent must be filed by the actual sole inventor or joint inventors of an invention. *See* 35 U.S.C. §§ 102, 111, 116, 118; *Diamond v. Diehr*, 450 U.S. 175, 190 n. 13, 101 S.Ct. 1048,

1058 n. 13, 67 L.Ed.2d 155 (1981); *Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1573 (Fed.Cir.1994); *A.F. Stoddard & Co., Ltd. v. Dann*, 564 F.2d 556, 560 (D.C.Cir. 1977); *Maxwell v. K Mart Corp.*, 880 F.Supp. 1323, 1334 n. 2 (D.Minn.1995). Thus, in order to be declared the sole inventor, Heden must prove that there was no joint inventorship. "Determining 'inventorship' is nothing more than determining who conceived the subject matter at issue...." *Sewall v. Walters*, 21 F.3d 411, 415 (Fed.Cir. 1994).

■ To be a joint inventor, an individual must contribute to the inventive thought or aid in the conception of the subject matter. *See id.; General Motors Corp. v. Toyota Motor Co., Ltd.*, 667 F.2d 504, 506 (6th Cir. 1981), *cert. denied*, 456 U.S. 937, 102 S.Ct. 1994, 72 L.Ed.2d 457 (1982); *Maxwell*, 880 F.Supp. at 1334; *see also Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1227 (Fed.Cir.1994), *cert. denied*, ── U.S. ──, 116 S.Ct. 771, 133 L.Ed.2d 724 (1996) (stating that a joint invention is the product of a collaboration between two or more persons to solve a problem). Merely assisting the actual inventor after the invention is conceived will not be enough to become a joint inventor. *See* 35 U.S.C. §§ 102, 116; *Maxwell*, 880 F.Supp. at 1334. After a person has conceived of an invention, he may use the services and assistance of others to perfect the invention without losing the right to obtain a patent in his sole name. *Rodgard Corp. v. Miner Enter., Inc.*, 914 F.Supp. 907, 917 (W.D.N.Y.1995) (citing *Hobbs v. United States*, 451 F.2d 849, 864 (5th Cir.1971)). To be a sole inventor, the inventor must have independently conceived of the subject matter of the invention. *See Sewall*, 21 F.3d at 415. "One who is the lone spark which leads to the final invention is the inventor." *Rodgard Corp.*, 914 F.Supp. at 917 (citing *Coleman v. Dines*, 754 F.2d 353, 359 (Fed.Cir. 1985)).

■ Conception is the formation, in the mind of the inventor, of a definite and permanent idea of the complete and operative invention. *Burroughs*, 40 F.3d at 1228; *Sewall*, 21 F.3d at 415; *Coleman*, 754 F.2d at 359; *Rodgard Corp.*, 914 F.Supp. at 917. An

idea is definite and permanent when the inventor has a specific, settled idea, not just a general goal or research plan. *Burroughs,* 40 F.3d at 1228; *Sewall,* 21 F.3d at 415; *Coleman,* 754 F.2d at 359. Conception is complete when one of ordinary skill in the art could construct the apparatus without unduly extensive research or experimentation. *Sewall,* 21 F.3d at 415. The inventor must prove his conception by corroborating evidence, preferably by showing a contemporaneous disclosure. *Burroughs,* 40 F.3d at 1228; *Coleman,* 754 F.2d at 359. Therefore, success on Heden's claim for declaration of sole inventorship depends on whether he independently conceived of the invention or whether Hill joined in the conception.

Heden alleges in ¶ 45 of his Third Amended Complaint that Groves changed the application from a sole inventor application in Heden's name to a joint inventor application, naming Hill first with Heden second. According to Heden, Groves did this without consultation or input from him and without sufficient inquiry into the true inventorship. In ¶ 46, Heden alleges that Groves prepared false affidavits, that some of the other defendants signed them, and that they were sent to the PTO, thus further depriving Heden of sole ownership. Finally, in ¶ 47, Heden asserts that Groves recklessly misrepresented the inventorship of the subject patent application to the PTO.

■ Merely because a person was deceitfully added to a patent application does not necessarily dictate that the party complaining of the fraudulently added "inventor" is the sole inventor. There must be some proof of inventorship. The presumption of validity of a patent includes a presumption that the correct inventors were named. *Jamesbury Corp. v. United States,* 518 F.2d 1384, 1395 (Ct.Cl.1975); *Garrett Corp. v. United States,* 422 F.2d 874, 880–81 (Ct.Cl.), *cert. denied,* 400 U.S. 951, 91 S.Ct. 242, 27 L.Ed.2d 257 (1970); *Rodgard Corp.,* 914 F.Supp. at 917; *Maxwell,* 880 F.Supp. at 1334. Thus, because Groves filed the application as a joint invention, Heden must now prove his sole inventorship to rebut the presumption. *See Sewall,* 21 F.3d at 414. The party disputing the correctness of the named inventors carries the burden of establishing misjoinder of inventors by clear and convincing evidence. *See General Motors Corp.,* 667 F.2d at 507; *Amax Fly Ash Corp. v. United States,* 514 F.2d 1041, 1050 (Ct.Cl.1975); *Kendall Co. v. Tetley Tea Co.,* 189 F.2d 558, 562 (1st Cir. 1951); *Rodgard Corp.,* 914 F.Supp. at 917; *Sim Kar Lighting Fixture Co.,* 906 F.Supp. at 971; *Maxwell,* 880 F.Supp. at 1334; *see also Price v. Symsek,* 988 F.2d 1187, 1192–94 (Fed.Cir.1993).

Groves maintains that there is no sole inventorship because there is joint inventorship. He argues that Heden's invention was inoperable and did not have a completed conception until Hill's contribution, the draft arm, made it operable. Groves asserts that each and every element of a claim need not have been invented "jointly" in order to have a joint invention. He alleges that Heden testified at deposition that his original concept was not workable and had numerous problems including the hoist design, the draft arm, and the top rail. A review of the deposition, however, reveals that Heden did not say that his invention was unworkable, although he did describe some problems with it. It is Groves's position that Heden said that the responsibility for solving these problems was given to Hill. Groves contends that because the draft arm, Hill's contribution, rendered the invention operable, Hill is at a minimum a joint inventor. Hence, according to Groves, because Hill is a joint inventor, Heden cannot be the sole inventor, and, therefore, summary judgment is appropriate.

Heden, on the other hand, claims that the invention was definite and workable. He contends that he was a consultant to Ultra Lite, who initially came up with the invention and disclosed it to the corporation to build, similar to the consultant in *Sewall,* who was found to be the sole inventor of the device at issue. *See* 21 F.3d at 414–15. Heden argues that, like the contribution of the employee in *Sewall,* who was found not to be a joint inventor, Hill's "draft arm" contribution is simply the exercise of normal skill. *Id.* at 416. Heden has submitted a letter from David E. Hartman, a professional engineer, which states that Heden's "overall design

concept is very sound and quite innovative." Heden further asserts that Hill's alleged contributions are not in the issued patent. While draft arms are mentioned in the specification of the patent, "draft arms" are not specifically part of the patent claims. Claims 8 and 19 of the patent, the only claims conceivably addressing this issue, simply mention an "external means for elevating...." Thus, Hill's "draft arms" are not part of the claimed invention.

A review of the evidence adduced by the parties reveals that there are outstanding issues of material fact as to whether Heden's invention was definite and workable and whether he was the sole inventor or Hill was a joint inventor of the patented dump truck design. Therefore, summary judgment is not warranted on Heden's declaratory judgment claim.

### C. *Constructive Fraud*

■ Constructive fraud is defined as a breach of a legal or equitable duty which, irrespective of moral guilt, is declared by law to be fraudulent because of its tendency to deceive others. *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex.1964); *Harkins v. Crews*, 907 S.W.2d 51, 64 n. 7 (Tex.App.—San Antonio 1995, writ denied); *Stum v. Stum*, 845 S.W.2d 407, 415 (Tex.App.—Fort Worth 1992, no writ); *Bado Equip. Co. v. Bethlehem Steel Corp.*, 814 S.W.2d 464, 475 (Tex.App.—Houston [14th Dist.] 1991, no writ); *Moody v. Pitts*, 708 S.W.2d 930, 936–37 (Tex.App.—Corpus Christi 1986, no writ). Constructive fraud consists of an act, statement, or omission which operates as a virtual fraud on an individual, or which, if generally permitted, would be prejudicial to the public welfare. BLACK'S LAW DICTIONARY 661 (6th ed. 1990).

■ Constructive fraud may be based on a duty that extends from a fiduciary or confidential relationship. *Archer*, 390 S.W.2d at 740; *Mills v. Gray*, 147 Tex. 33, 210 S.W.2d 985, 989 (1948); *Garcia v. Fabela*, 673 S.W.2d 933, 936 (Tex.App.—San Antonio 1984, no writ); *Hudspeth v. Stoker*, 644 S.W.2d 92, 94 (Tex.App.—San Antonio 1982, writ ref'd). These relationships may arise out of informal relations "where one person

trusts in and relies upon another, whether the relationship is a moral, social, domestic or merely personal one." *Crim Truck & Tractor v. Navistar Int'l*, 823 S.W.2d 591, 594 (Tex.1992) (quoting *Fitz–Gerald v. Hull*, 150 Tex. 39, 237 S.W.2d 256, 261 (1951)). The existence of a confidential relationship is usually a question of fact. *Id.* "A confidential relationship exists where one person has special confidence in another to the extent that the parties do not deal with each other equally, either because of dominance on one side or weakness, dependence, or justifiable trust on the other." *Pope v. Darcey*, 667 S.W.2d 270, 275 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

■ It is Groves's position that because Hill was a joint inventor, the listing of Hill as a joint inventor on the application to the PTO was proper, and, hence, there was no misrepresentation or constructive fraud. Alternatively, Groves submits that because Heden testified at his deposition that he did not trust Groves, there was no confidential relationship between them, and, thus, no constructive fraud could have occurred.

Heden alleges that a confidential relationship existed between Heden and Groves because Heden disclosed his confidential patent application to Groves. Heden asserts that Groves breached the confidential relationship by converting the application and, thus, committed constructive fraud. Heden also maintains that there was a confidential relationship between Groves and Ultra Lite. Heden argues that as the attorney for Ultra Lite, Groves was precluded from representing another client in a matter adverse to Ultra Lite, and when Groves pursued the application on behalf of Alumatech and Hill, this was a breach of the confidential relationship sufficient to establish constructive fraud.

Because there are genuine issues of material fact regarding inventorship and the existence of a confidential relationship between Groves and Heden, summary judgment is inappropriate on Heden's claim of constructive fraud.

### D. *Common Law Fraud and Coercion*

■ To establish fraud under Texas law, the plaintiff must show that:

(1) a material misrepresentation was made;

(2) it was false;

(3) it was known to be false when it was made or it was made with reckless disregard for the truth;

(4) it was intended that it would be acted upon;

(5) it was relied upon; and

(6) it resulted in injury.

*Norman v. Apache Corp.,* 19 F.3d 1017, 1022 (5th Cir.1994); *Boggan v. Data Sys. Network Corp.,* 969 F.2d 149, 151–52 (5th Cir.1992); *Sears, Roebuck & Co. v. Meadows,* 877 S.W.2d 281, 282 (Tex.1994); *T.O. Stanley Boot Co., Inc. v. Bank of El Paso,* 847 S.W.2d 218, 222 (Tex.1992); *DeSantis v. Wackenhut Corp.,* 793 S.W.2d 670, 688 (Tex.1990), *cert. denied,* 498 U.S. 1048, 111 S.Ct. 755, 112 L.Ed.2d 775 (1991); *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex.1983).

Groves maintains that Heden's claim of common law fraud is based on the alleged fraudulent naming of Dale Hill as a joint inventor. Groves contends that because Hill was a joint inventor and was properly named in the patent application, summary judgment is proper.

Contrary to Groves's assertion, there is a fact issue as to inventorship, as discussed above. Moreover, Heden has proffered sufficient evidence on each of the elements of fraud under Texas law. Thus, summary judgment is improper on Heden's fraud claim.

E.  *Tortious Interference with Business Relations*

■  In Texas, to establish tortious interference with business relations, the plaintiff must prove:

(1) a reasonable probability that the plaintiff would have gotten a contract;

(2) malicious and intentional action by the defendant which aborted the prospective business relationship; and

(3) actual harm to the plaintiff.

*ContiCommodity Servs., Inc. v. Ragan,* 63 F.3d 438, 443 (5th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 1318, 134 L.Ed.2d 471 (1996); *In re Burzynski,* 989 F.2d 733, 739 (5th Cir.1993) (citing *C.E. Servs., Inc. v. Control Data Corp.,* 759 F.2d 1241, 1249 (5th Cir.), *cert. denied,* 474 U.S. 1037, 106 S.Ct. 604, 88 L.Ed.2d 583 (1985)); *Juliette Fowler Homes, Inc. v. Welch Assocs. Inc.,* 793 S.W.2d 660, 665 (Tex.1990). "It need not be absolutely certain that the prospective contract would have been made if not for such interference. A reasonable assurance thereof in view of all the circumstances, is generally sufficient." *Verkin v. Melroy,* 699 F.2d 729, 732 (5th Cir.1983) (quoting *Martin v. Phillips Petroleum Co.,* 455 S.W.2d 429, 435 (Tex.Civ.App.—Houston [14th Dist.] 1970, no writ)). Justification on the part of the defendant is an affirmative defense on which the defendant bears the burden of pleading and proof. *Burzynski,* 989 F.2d at 739; *Kiepfer v. Beller,* 944 F.2d 1213, 1220 (5th Cir.1991); *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 939 (Tex.1991); *Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).

Groves again claims that this count is based on his naming joint inventors rather than naming Heden as a sole inventor in the patent application. As stated above, there is a fact issue precluding summary judgment on the issue of inventorship. Furthermore, Heden has presented adequate evidence of the reasonable probability of entering into a business relationship, interference by Groves, and malicious intent. In addition, Groves has failed to meet his burden of pleading and proving justification. Therefore, Groves is not entitled to summary judgment on Heden's claim of tortious interference with business relations.

F.  *Civil Conspiracy*

■  In Texas, a civil conspiracy is established when:

(1) two or more persons

(2) with an object to be accomplished

(3) and with a meeting of minds on the object or course of action

(4) commit one or more unlawful overt acts, and

(5) there are damages as the proximate result.

*Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 719–20 (Tex.1995); *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983); *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex.1968); *Great Nat'l Life Ins. Co. v. Chapa*, 377 S.W.2d 632, 635 (Tex.1964).

■ Groves argues that Heden admitted at deposition that he had never been in the business of designing truck bodies, and, thus, there could be no agreement to harm Heden's ability to compete fairly in the trailer body design industry. Groves further contends that a civil conspiracy requires damages resulting from the commission of a wrong that injures another, and, because Heden has no claim for damages for any loss of past or future or prospective earnings, summary judgment is appropriate. Groves also alleges that because Heden was not in the trailer business, he could have no damages.

A review of the complaint, however, reveals that Heden is seeking damages for lost revenues, profits, royalties, etc. Heden points out that a patent owned by a joint inventor is less valuable because each inventor may make, use, offer to sell, or sell the patented invention without the consent of and without accounting to the other person. *See* 35 U.S.C. § 262. In addition, Heden has adduced sufficient evidence on each of the elements of civil conspiracy to withstand summary judgment. Consequently, because there are fact issues with regard to Heden's civil conspiracy claim, summary judgment is inappropriate.

### G. *Libel, Slander, and Defamation*

■ A statement is defamatory if it tends to harm the reputation of a person or to lower the person in the estimation of the community or to deter third persons from associating or dealing with him or her, or if it tends to expose the person to public hatred, contempt, or ridicule. *Hardwick v. Houston Lighting & Power Co.*, 881 S.W.2d 195, 197 (Tex.App.—Corpus Christi 1994, writ dism'd w.o.j.). Libel is a written defamatory statement which tends to injure a person's reputation, thus exposing him to "public hatred, contempt, ridicule, or financial injury, or impeach any person's honesty, integrity, virtue,

or reputation." *See* Tex.Civ.Prac. & Rem. Code Ann. § 73.001; *Halbert v. City of Sherman*, 33 F.3d 526, 530 (5th Cir.1994) (quoting *Sellards v. Express–News Corp.*, 702 S.W.2d 677, 679 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.)); *Cain v. Hearst Corp.*, 878 S.W.2d 577, 580 (Tex.1994); *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654–55 (Tex.1987); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex.1984). Slander is a defamatory statement published orally to a third person without legal excuse. *Halbert*, 33 F.3d at 530; *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex.1995).

■ Heden claims that the listing of Hill's name in the patent, statements contained in the file wrapper of the patent alleging that Heden had made death threats against Hill's family, and certain statements contained in Groves's letter of November 15, 1994, alleging death threats by Heden, Heden's belief that he is Jesus Christ, and Heden's refusal to pay income taxes, are defamatory. Groves claims that this count is subject to summary judgment because the listing of Hill's name first was not a false statement capable of causing defamatory impressions, tending to injure reputation, or causing financial injury. As discussed above, however, there is a fact issue as to whether the statement of joint ownership is false. Moreover, Groves does not address the libel claims grounded upon the file wrapper of the patent or Groves's letter of November 15, 1994, and as to those claims, fact issues also exist. In addition, Groves has not established that he is entitled to a qualified privilege protecting statements made in good faith on a matter in which he had an interest. *See Halbert*, 33 F.3d 526, 530; *Houston v. Grocers Supply Co.*, 625 S.W.2d 798, 800 (Tex.App.—Houston [14th Dist.] 1981, no writ). Nevertheless, Groves correctly points out that Heden has not stated a viable slander claim and, therefore, Groves is entitled to summary judgment on that issue. Aside from the slander claim, however, summary judgment is improper with regard to Heden's claim of libel and defamation.

### H. *RICO Violations*

In 1970, Congress enacted RICO as Title IX of the Organized Crime Control Act to combat organized crime through both criminal prosecutions and private actions. *See* 18 U.S.C. § 1961 *et seq.* The "legislative history forcefully supports the view that the major purpose of Title IX is to address the infiltration of legitimate business by organized crime." *United States v. Turkette,* 452 U.S. 576, 591, 101 S.Ct. 2524, 2532, 69 L.Ed.2d 246 (1981). A private right of action is provided under 18 U.S.C. § 1964(c), which states in pertinent part:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Both the government and private plaintiffs may sue for violations of the substantive provisions of the statute. *Religious Technology Ctr. v. Wollersheim,* 796 F.2d 1076, 1080 (9th Cir.1986), *cert. denied,* 479 U.S. 1103, 107 S.Ct. 1336, 94 L.Ed.2d 187 (1987). RICO essentially provides that:

> (a) a person who has received income from a pattern of racketeering activity cannot invest that income in an enterprise;
>
> (b) a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering;
>
> (c) a person who is employed by or associated with an enterprise cannot conduct the enterprise's affairs through a pattern of racketeering;
>
> (d) a person cannot conspire to violate subsections (a), (b), or (c).

*See* 18 U.S.C. § 1962(a)–(d); *Burzynski,* 989 F.2d at 741.

Under RICO, while four distinct offenses are declared to be unlawful, common elements are present in all four offenses. *Calcasieu Marine Nat'l Bank v. Grant,* 943 F.2d 1453, 1461 (5th Cir.1991); *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.,* 868 F.2d 740, 742 (5th Cir.1989); *Delta Truck & Tractor, Inc. v. J.I. Case Co.,* 855 F.2d 241, 242 (5th Cir.1988), *cert. denied,* 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d 836 (1989). Reduced to its three essentials, a civil RICO claim must involve:

> (1) a *person* who engages in
>
> (2) a *pattern of racketeering activity,*
>
> (3) connected to the acquisition, establishment, conduct, or control of an *enterprise.*

*Burzynski,* 989 F.2d at 741 (quoting *Delta Truck & Tractor, Inc.,* 855 F.2d at 242 (emphasis in original)); *Calcasieu Marine Nat'l Bank,* 943 F.2d at 1461; *see also Landry v. Air Line Pilots Ass'n Int'l,* 901 F.2d 404, 434 (5th Cir.), *cert. denied,* 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990); *Smith v. Cooper/T. Smith Corp.,* 886 F.2d 755, 756 (5th Cir.1989); *Ocean Energy II,* 868 F.2d at 743.

Groves claims that there is no alleged conduct of an enterprise, which is a prerequisite to a RICO claim. Further, Groves contends that he never participated in any of the activities alleged in this count.

Heden, on the other hand, maintains that the corporate forms of Ultra Lite and Alumatech have been used as "criminal enterprises" separate and distinct from the individual defendants in this case. Heden asserts that the defendants engaged in mail and wire fraud in connection with the patent application. He alleges that the defendants prepared false affidavits and used the mail or telephone lines to send the affidavits to the PTO. Heden contends that these allegations are sufficient to satisfy the predicate act requirement of RICO. Heden maintains that these predicate acts are related in that they have the same purpose of unfairly usurping plaintiff's invention. He also alleges that the predicate acts have continuity such that this past conduct by its nature will project into the future with a threat of repetition in hindering his ability to market his invention.

### 1. *Existence of an Enterprise*

RICO defines "enterprise" very broadly. The term "enterprise" includes "any individual, partnership, corporation, association or other legal entity, any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). There is no restriction upon the associations em-

braced by the definition: a RICO "enterprise" can be either a legal entity or an "association in fact" enterprise. *Burzynski*, 989 F.2d at 743; *see Turkette*, 452 U.S. at 580, 101 S.Ct. at 2527. A legitimate business entity, such as a corporation, may constitute an "enterprise." *United States v. Brown*, 583 F.2d 659, 663 (3d Cir.1978), *cert. denied*, 440 U.S. 909, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979). An illegal organization also may be an enterprise for RICO purposes. *Turkette*, 452 U.S. at 580–81, 101 S.Ct. at 2527–28. An enterprise is proved by "evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Id.* at 583, 101 S.Ct. at 2528. In addition, the enterprise must be shown to have an existence "separate and apart from the pattern of activity in which it engages." *Id.* A plaintiff must plead specific facts, not mere conclusory allegations, to establish the enterprise. *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir.1987).

### 2. *Separation between Enterprise and Racketeers*

The term "person" includes "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3). A corporation qualifies as a "person" and may be subject to RICO liability. *Haroco, Inc. v. American Nat'l Bank & Trust Co.*, 747 F.2d 384, 401 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985). The overwhelming weight of authority is that there must be a distinction between the RICO "person" and the RICO "enterprise." *Burzynski*, 989 F.2d at 743; *Bishop v. Corbitt Marine Ways, Inc.*, 802 F.2d 122, 122 (5th Cir.1986). In *Bishop*, the Fifth Circuit specifically adopted the reasoning of the Seventh Circuit in *Haroco, Inc.*, holding in line with the majority view, that § 1962(c) requires the person and the enterprise to be separate entities. *Bishop*, 802 F.2d at 123. "When the alleged Section 1962(c) violator is a legal entity, such as a corporation, this required separation is not established merely by showing that the corporation, through its employees, officers, and/or directors, committed a pattern of predicate acts in the conduct of its own busi-

ness." *Old Time Enter., Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir.1989).

### 3. *Pattern of Racketeering*

#### a. *Racketeering Activity*

"Racketeering activity" is defined in § 1961(1) in terms of a list of state and federal crimes. *See* 18 U.S.C. § 1961(1). The individual acts of racketeering activity are usually described as the "predicate offenses." Section 1961(1)(A) specifies that racketeering activity means "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year." The state law felony offenses listed in § 1961(1)(A) are included by generic designation, and the test for determining whether particular acts fit into the generic category of predicate offense is whether the complaint alleges the type of activity generally known or characterized in the proscribed category. *See United States v. Forsythe*, 560 F.2d 1127, 1137 (3d Cir.1977) (citing *United States v. Nardello*, 393 U.S. 286, 295, 89 S.Ct. 534, 539, 21 L.Ed.2d 487 (1969)). Under § 1961(1)(B), racketeering activity includes any act which is indictable under a number of federal criminal statutes, including mail fraud and wire fraud. Any act that does not fall within the purview of RICO's definition of predicate offenses is not an act of "racketeering activity." *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 793 F.Supp. 1114, 1136 (E.D.N.Y.1992). A plaintiff may not convert state law claims into a federal treble damage action simply by alleging that wrongful acts are a pattern of racketeering related to an enterprise. *King v. Lasher*, 572 F.Supp. 1377, 1382 (S.D.N.Y.1983).

In this case, Heden alleges mail fraud and wire fraud as predicate acts supporting his civil RICO claims. *See* 18 U.S.C. §§ 1341, 1343. A criminal conviction of the defendants for mail or wire fraud is not a condition of urging these offenses as the basis for civil RICO claims. *CMI, Inc. v.*

*Intoximeters, Inc.,* 918 F.Supp. 1068, 1089 (W.D.Ky.1995). Nonetheless, "the conduct used to support a civil RICO action must be *indictable." Central Distrib. of Beer, Inc. v. Conn,* 5 F.3d 181, 183 (6th Cir.1993) (emphasis in original) (citing *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 481–82, 105 S.Ct. 3275, 3277–78, 87 L.Ed.2d 346 (1985)); *CMI, Inc.,* 918 F.Supp. at 1089. Moreover, allegations of mail fraud and wire fraud must be made with the particularity required by FED. R.CIV.P. 9(b). *Central Distrib. of Beer, Inc.,* 5 F.3d at 184; *Blount Fin. Servs., Inc. v. Walter E. Heller & Co.,* 819 F.2d 151, 152 (6th Cir.1987); *Protter v. Nathan's Famous Sys., Inc.,* 904 F.Supp. 101, 108 (E.D.N.Y. 1995). Thus, the plaintiff must plead and prove each prong of the predicate offense, or "racketeering activity," to maintain a civil action under the RICO statute. *Central Distrib. of Beer, Inc.,* 5 F.3d at 183–84 (citing *Sedima, S.P.R.L.,* 473 U.S. at 488–92, 105 S.Ct. at 3280–83); *Blount Fin. Servs., Inc.,* 819 F.2d at 152; *CMI, Inc.,* 918 F.Supp. at 1089. Hence, to maintain his RICO claims, Heden must show that each element of a mail fraud or wire fraud offense has been committed by the defendants.

■ For mail fraud, it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud. *Central Distrib. of Beer, Inc.,* 5 F.3d at 184; *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1399–1400 (9th Cir.1986). A RICO claim asserting mail fraud as a predicate act must allege how each specific act of mail fraud actually furthered the fraudulent scheme, who caused what to be mailed when, and how the mailing furthered the fraudulent scheme. *Landon v. GTE Communications Servs., Inc.,* 696 F.Supp. 1213, 1217 (N.D.Ill.1988). The mail fraud statute does not reach every business practice that fails to fulfill expectations, every breach of contract, or every breach of fiduciary duty. *Marriott Bros. v. Gage,* 704 F.Supp. 731, 739 (N.D.Tex.1988) (citing *United States v. Kreimer,* 609 F.2d 126, 128 (5th Cir.1980); *United States v. Goss,* 650 F.2d

1336, 1346 (5th Cir.1981)). "Rather, there must have been 'a recognizable scheme formed with specific intent to defraud.'" *Id.* (quoting *Goss,* 650 F.2d at 1346). In addition, the defendant must have made fraudulent representations or omissions reasonably calculated to deceive. *Id.* (citing *United States v. Finney,* 714 F.2d 420, 423 (5th Cir.1983)).

Similarly, a wire fraud violation consists of (1) the formation of a scheme or artifice to defraud; (2) use of the United States wires or causing a use of the United States wires in furtherance of the scheme; and (3) specific intent to deceive or defraud. *Central Distrib. of Beer, Inc.,* 5 F.3d at 184; *Schreiber,* 806 F.2d at 1400. The mail fraud and wire fraud statutes are construed similarly, and the same substantive analysis is used with both statutes. *Carpenter v. United States,* 484 U.S. 19, 25 n. 6, 108 S.Ct. 316, 320 n. 6, 98 L.Ed.2d 275 (1987); *Food Lion, Inc. v. Capital Cities/ABC, Inc.,* 887 F.Supp. 811, 817 (M.D.N.C.1995); *FDIC v. Bayles & Co. of Am., Inc.,* No. 87–1468–CIV–T–17B, 1992 WL 161055, at *8 (M.D.Fla. June 30, 1992).

■ Unlike in criminal RICO prosecutions, civil RICO plaintiffs must allege and prove reliance in cases using the mail and wire fraud statutes as predicate offenses. *Id.* (citing *Pelletier v. Zweifel,* 921 F.2d 1465, 1499 (11th Cir.1991)). Therefore, Heden cannot maintain a civil RICO claim against Groves absent evidence that Groves made misrepresentations or omissions of material fact to Heden, through the use of the mails or wires, and evidence that Heden relied on those misrepresentations or omissions to his detriment. *See Central Distrib. of Beer, Inc.,* 5 F.3d at 184; *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984). Here, although there is evidence presented concerning misrepresentations or omissions of material fact by Groves, Heden does not show that these misrepresentations or omissions were made to him, either by mail or wire, or relied upon by him. Instead, the summary judgment evidence focuses on Groves's purported misrepresentations and omissions to Mosely and the PTO. "[T]he fraud connected with mail or wire fraud must

involve misrepresentations or omissions flowing from the defendant to the plaintiff." *Central Distrib. of Beer, Inc.*, 5 F.3d at 184. "Although a general fraudulent scheme which incidentally affects a person may support other civil claims against the wrongdoer, the victim cannot assert a RICO claim absent evidence that the defendant made representations to the victim." *Id.* Therefore, Heden has not shown that Groves engaged in acts that would constitute mail fraud or wire fraud against him and, thus, has not demonstrated the requisite predicate offenses to establish "racketeering activity."

#### b. *Pattern of Racketeering Activity.*

Even if Heden could establish racketeering activity, he must also show that there was a *pattern* of racketeering activity. *See Burzynski*, 989 F.2d at 742; *Delta Truck & Tractor, Inc.*, 855 F.2d at 242. A "pattern of racketeering activity" requires at least two acts of racketeering activity within a ten-year period. 18 U.S.C. § 1961(5). Although at least two acts of racketeering are necessary to constitute a pattern, two acts may not be sufficient. *Sedima, S.P.R.L.*, 473 U.S. at 496 n. 14, 105 S.Ct. at 3285 n. 14. RICO's legislative history leaves no doubt that "there is something to a RICO pattern beyond simply the number of predicate acts involved." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 238, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989). "To prove a pattern of racketeering activity a plaintiff must show that the predicate acts are related to each other and that they either constitute or threaten long-term continued criminal activity." *Burzynski*, 989 F.2d at 742 (citing *H.J., Inc.*, 492 U.S. at 239, 109 S.Ct. at 2900–01). Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* (quoting *H.J., Inc.*, 492 U.S. at 240, 109 S.Ct. at 2901).

Continuity, however, is a more elusive concept. In *H.J., Inc.*, the court described continuity as "both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." 492 U.S. at 241, 109 S.Ct. at 2902. Continuity exists where the predicate acts constitute or threaten continued criminal activity. *Id.* at 240, 109 S.Ct. at 2901. The court listed several examples of what would establish a threat of continued racketeering: (1) the predicate acts inherently involve a distinct threat of long-term criminal activity; (2) the entity exists for the purpose of engaging in criminal activity; or (3) the predicate acts are a regular way of conducting an ongoing legitimate business. *Id.* at 242–43, 109 S.Ct. at 2902–03. Where the criminal scheme is not open-ended and has reached its fruition, continuity may be shown by proving that a series of related predicate acts extended over a substantial period of time. *Id.* at 242, 109 S.Ct. at 2902. A few weeks or months does not qualify as a substantial period of time. *Id.* Proof of multiple criminal schemes, however, is not necessary to show a pattern. *Id.*

In this case, Heden has failed to adduce sufficient evidence of a "pattern of racketeering activity" necessary to maintain a RICO claim. The predicate acts must "amount to or threaten *continuing* racketeering activity." *Burzynski*, 989 F.2d at 742 (emphasis in original). It is "continuity" that assures a federal cause of action. *Id.* "'It refer[s] either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition.'" *Id.* (quoting *H.J., Inc.*, 492 U.S. at 241, 109 S.Ct. at 2902). Here, there is inadequate evidence of either repeated conduct by Groves within a closed period or past conduct that poses a future threat of repetition. The record reflects that Ultra Lite, one of the alleged "criminal enterprises," was incorporated in 1989, ceased doing business in 1990, and filed for bankruptcy protection in November 1990. Within this brief time span, there was not sufficient repeated conduct of related, predicate acts by Groves and Ultra Lite to be deemed continuing racketeering activity. Moreover, there is no threat of repetition in the future, as Ultra Lite is no longer a viable entity and the patent at issue was transferred to Hill in 1991 and subsequently to GHB Patent, Inc. The lack of continuity also exists as to any alleged racke-

teering activity involving Alumatech, the other asserted "criminal enterprise." There is insufficient evidence of repeated, predicate acts by Groves and Alumatech during the year or two it was in business producing dump trucks based on the disputed design. There is also no future threat of repetition by Alumatech, as it filed for bankruptcy protection under Chapter 7 in August 1995. Moreover, with regard to Alumatech, Heden cannot establish a RICO enterprise separate and apart from Groves, as he was an initial director of the corporation. *See Burzynski,* 989 F.2d at 743; *Old Time Enter., Inc.,* 862 F.2d at 1217; *Bishop,* 802 F.2d at 123.

Therefore, because Heden has not demonstrated the requisite "racketeering activity" or "pattern of racketeering activity," Groves is entitled to summary judgment on Heden's RICO claims.

IV. *Conclusion*

This court RECOMMENDS that Groves's Motion for Summary Judgment be GRANTED IN PART with respect to Heden's claims of slander and RICO violations and DENIED IN PART with regard to Heden's claims for declaratory judgment as to the ownership of the patent, constructive fraud, common law fraud and coercion, tortious interference with business relations, civil conspiracy, and libel and defamation.

The parties have ten days from receipt to file specific, written objections to the Memorandum and Recommendation. FED.R.CIV.P. 72. Absent plain error, failure to file objections bars an attack on the factual findings, as well as legal conclusions, on appeal. The original of any written objections shall be filed with the United States District Clerk, P.O. Box 61010, Houston, Texas 77208–1010. Copies of the objections must be mailed to the opposing parties and to the chambers of the magistrate judge, P.O. Box 610070, Houston, Texas 77208–0070.

SIGNED at Houston, Texas, on this 19th day of July, 1996.